## SHAW v. RAILROAD.

(Filed December 11, 1906).

*Railroads—Passengers Riding on Platform—Contributory Negligence—Announcement of Station.*

1. By virtue of Revisal, section 2628, the rule of a railroad company prohibiting passengers from going on the platform while the train is in motion, is given, when the statute has been complied with, the force and effect of a law of the State prohibiting passengers from going on the platform of moving trains, and barring a recovery for injuries sustained under such circumstances.

2. An instruction that Revisal, section 2628, does not apply if the plaintiff entered upon the platform in *bona fide* belief that the train was not moving, and if a reasonably prudent person under similar circumstances would have so believed and acted, was erroneous.

3. The mere announcement of the name of a station is not an invitation to alight; but, when followed by a *full stoppage* of the train soon thereafter, is ordinarily notification that it has arrived at the usual place of landing passengers.

CLARK, C. J., and HOKE, J., dissenting.

ACTION by Mrs. Bessie Shaw against Seaboard Air Line Railway Company, heard before *Judge Henry R. Bryan* and a jury, at the March Term, 1906, of the Superior Court of MECKLENBURG.

This was a civil action for the recovery of damages for injuries sustained by plaintiff as the result of an alleged fall from the front platform of one of the defendant's passenger-cars while a passenger thereon on the night of 26 February, 1905, at a point about three-quarters of a mile west of Matthews, N. C., which fall, it is claimed, was caused by the sudden and violent jerking of the train. The Court submitted the usual issues of negligence, contributory negligence and damage. The jury found the issues for the plaintiff and assessed her damages. From the judgment rendered, defendant appealed.

*Stewart & MacRae* and *Tillett & Guthrie* for the plaintiff.
*Burwell & Cansler* for the defendant.

BROWN, J.   Plaintiff was a passenger on defendant's passenger train going to Matthews, N. C.   In the car in which she was traveling was the following printed notice posted up at the time in a conspicuous place:

"NOTICE!   Passengers are prohibited from going on PLATFORMS or between CARS while the train is in motion, and are warned not to allow their HEADS or LIMBS to project from CAR WINDOWS."

The evidence is conflicting, but there is much evidence tending to prove that plaintiff went out on the platform of the car and was injured thereon while the train was moving and before it had come to a stop.

Section 2628, Revisal of 1905, reads as follows: "In case any passenger on any railroad shall be injured while on the platform of the car, or on any baggage, wood or freight car, in violation of the printed regulations of the company posted up at the time in a conspicuous place inside its passenger-cars then in the train, said company shall not be liable for the injury: *Provided,* said company, at the time, furnishes room inside its passenger-cars sufficient for the proper accommodation of its passengers."

It is not contended that plaintiff went out on the platform for lack of room inside the car, because it appears from her own testimony that she had a seat; nor did she go out at the invitation of the defendant's agent.   Her testimony is that the train was not in motion when she went on the platform.

The following instruction was given by the Court, to which defendant duly excepted: "If the jury shall find that, when the plaintiff went upon the platform, she did so in the *bona fide* belief that the train was not in motion, but that it had come to a full stop, and that a reasonably prudent person

under the same circumstances would have so believed and so acted, then you are instructed that section 2628 of the Revisal of 1905 would not apply, although the train had not actually come to a full stop; and, in this view, if you shall find that the defendant was guilty of negligence, as alleged in the complaint, you will answer the first issue 'Yes.' "

The rule of the defendant company, which we have quoted, is given, when the terms of the statute have been complied with, the force and effect of a law of the State prohibiting passengers from going out on the platform of moving trains, and barring a recovery for injuries sustained under such circumstances. In other words, when the railroad company complies with the statute and the passenger voluntarily violates the rule posted for his protection, and he is consequently injured, the law refuses him a right of action. The passenger's conduct is not to be governed entirely by the doctrine of contributory negligence as expounded by the courts, but rather in the light that there is no actionable negligence—no cause of action. The statute is made for the protection of passengers as well as for that of the railroad company, and specifically relieves the company from any liability when the passenger violates its provisions.

The vice in the quoted instruction is that it gives to the passenger the benefit of the rule of the prudent man as if the matter were being considered under the second issue and solely in the light of contributory negligence. The instruction reads into the statute something that is not there, and practically places upon the railroad company the responsibility for the passenger's error. However inadvertent such error, the passenger, and not the carrier, is to blame. His Honor assumes that the train was moving (how fast he did not state), and declares that the statute does not apply if the plaintiff entered upon the platform in the bona fide belief that the train was not moving, and if a reasonably prudent

person under similar circumstances would have so believed and so acted. This practically nullifies the force and effect of the statute and leaves it for the jury to determine when they will apply the statute and when not. It is a very simple and easy matter by observing outside objects or the earth itself to tell when a train is at a standstill, and it imposes no hardship upon a passenger to require him to be certain as to that before entering upon the platform. The carrier owes no duty to be upon the lookout for passengers who violate the printed rule and go on the platform when prohibited, and the engineer and those in charge of the train have a right to suppose that passengers will remain in the car until it comes to a full stop, and they have a right to act accordingly. The statute contains no exception to its general provision, and in plain terms relieves the company from liability in the case of a passenger injured while on the platform of a moving train when the company, as in this case, has complied with its terms.

In *Denny v. Railroad,* 132 N. C., 340, it is held that a passenger who voluntarily goes upon the platform of a moving train for the purpose of alighting at the station, and is injured by reason of a jerk in the train, is not entitled to recover therefor, and *Mr. Justice Connor,* speaking of the duty of the engineer, says: "He cannot be supposed to know or anticipate that passengers, *in defiance of the rules,* have gone upon the platform and are standing upon the steps of the car while in motion." See also *Railroad Co. v. Hawk,* 72 Ala., 112. In the case before us, as in *Denny's case,* there is no suggestion that the conductor was upon the platform and no evidence that plaintiff was invited to go out there preparatory to leaving the train.

The fact that the porter called out the station name before reaching the station was no invitation to go upon the platform, for at that time the train was running rapidly, and only after

the announcement did it begin to slow down. In *Smith v. Railroad,* 88 Ala., it is said: "The mere announcement of the name of a station is not an invitation to alight; but, when followed by a *full stoppage* of the train soon thereafter, is ordinarily notification that it has arrived at the usual place of landing passengers. * * * Comparing all the cases, we deduce that, when the name of the station is called, and, soon thereafter, the train is brought to a standstill, a passenger may reasonably conclude that it has stopped at the station, and endeavor to get off, unless the circumstances and indications are such as to render manifest that the train has not reached the proper and usual landing-place." To the same effect are the following cases: *England v. Railroad,* 21 N. E., 1; *Railroad Co. v. Holmes,* 97 Ala., 332; *Mitchell v. Railroad,* 51 Mich., 236; *Railroad v. Green,* 25 Am. St. Rep., 255; *Minock v. Railroad,* 56 N. W., 870.

It is contended by defendant that there is a material variation between the allegation of the complaint and plaintiff's proof, in that she alleges in her complaint that the train was moving when she entered on the platform, and in her testimony she states that it was at a standstill. It is unnecessary that we consider this, as the complaint may be amended before another trial.

New Trial.

HOKE, J., dissenting: I cannot concur in the decision of this case, and am of opinion that by an erroneous application of a wholesome principle the decision of the Court may work great injustice to the plaintiff in the further trial of the cause.

The objection urged against the validity of the present trial and held for error in the opinion of the Court is that the charge of the Judge contravenes a rule of the company made and posted pursuant to the statute, Revisal 1905, 2628, which

forbids passengers from going on the platform when the train is in motion.

I think the statute is a wise one, and the rule a reasonable regulation when reasonably interpreted; but I cannot think that any correct or reasonable interpretation of this rule would uphold or sustain the objection made to the charge on the facts of the present case.

These facts show that about a mile from Matthews Station there had been a washout which had been recently repaired, and the employees of the defendant had been instructed, or were accustomed to stop or slow down at this place. There was no testimony that plaintiff was aware of this custom or of these instructions.

The theory and testimony of the plaintiff was that at the time of the occurrence plaintiff was a passenger on the defendant road, going from Charlotte to Matthews, a station about ten miles out, in the night-time. On approaching Matthews, near which town she lived, the porter on the train came through the first-class car where plaintiff was and called out "Matthews." The train immediately began to slow down, and plaintiff got up from her seat and started to go out. She had her grip in her hand and her baby on her arm as she went towards the front door; and by the time the plaintiff had reached the front door the train had almost stopped, and when witness got to the platform it had stopped. The train then gave a violent jerk and plaintiff was thrown down and seriously injured.

Another witness for the plaintiff said that the train had slowed up and looked to him like it stopped when it got even with the washout, and then gave a sudden jerk and went forward.

Yet another witness for plaintiff stated that the train had gotten very slow at the washout, but he did not think that the train had quite stopped.

The theory of the defendant was that the train had never gotten slower than five miles an hour at this point, the testimony of the defendant being that it was running from five to ten miles an hour.

Presenting the theory and testimony of the defendant, the Court charged the jury, among other things, that the general rule is that passengers who are attempting to go on or off a moving train in violation of the rules of the railroad company cannot recover for injuries received by them. This being so, if the jury find that at the time plaintiff was injured there was a printed notice posted up in a conspicuous place warning passengers not to go on the platform while the train was in motion, and plaintiff went upon the platform, under the erroneous impression that it was slowing up for her station, and while upon said platform plaintiff was thrown therefrom as a result of a sudden jerk or movement of the train, which was slowing up for a washout, then the Court charges that the plaintiff was guilty of contributory negligence in going on the platform while the train was slowing up; which negligence on her part would be the proximate cause of the injury, and the jury should answer the second issue "Yes." That even though the jury should find that the defendant was guilty of negligence in failing to warn the plaintiff that the train was slowing for the washout, and not for the station, or in causing the train to be suddenly and violently jerked forward while at the washout, yet, if the jury find that plaintiff went on the platform of the car while it was in motion in violation of the printed regulation of the company, posted in a conspicuous place in the car, and was injured on account of a sudden jerk or movement of the car while on the platform preparing to alight, then the Court charges the jury that the plaintiff was guilty of contributory negligence, which would be the proximate cause of the injury.

Again, if the jury find, by the greater weight of the evidence, that there was a rule properly posted in the car, for-

bidding passengers to go on the platform while the train was in motion, and she went on the platform while the train was running from five to ten miles an hour and was thrown, in that event she would be guilty of contributory negligence.

In presenting the theory and evidence for the plaintiff, the Court charged the jury as follows:

"If the jury shall find, by the greater weight of the evidence, that shortly before reaching Matthews, on the night referred to in the complaint, the defendant's employee went through the passenger coach in which the plaintiff was riding and called 'Matthews,' and that immediately thereafter the train began to slow up, and gradually ran slower and slower, until it came to a full stop, and that the plaintiff, while the train was slowing up, went towards the platform, believing that the train had stopped for the station, and in so doing acted as a reasonably prudent person would have acted under the same or similar circumstances, and while so upon the platform the train, without warning to her, was suddenly jerked forward by the defendant's employees, and by reason of said sudden jerking forward the plaintiff was thrown from the said platform to the ground, and thereby injured as alleged in the complaint, then the jury are instructed that this was negligence on the part of the defendant, and they will answer the first issue 'Yes.' "

And further, at the request of the plaintiff, gave the following special instructions:

"If the jury shall find that, when the plaintiff went upon the platform, she did so in the *bona fide* belief that the train was not in motion, but that it had come to a full stop, and that a reasonably prudent person, under the same circumstances, would have so believed and so acted, then you are instructed that section 2628 of the Revisal of 1905 would not apply, although the train had not actually come to a full stop; and, in this view, if you find that the defendant was guilty of

negligence, as alleged in the complaint, you will answer the first issue 'Yes.' "

We have held, in several well-considered decisions in this State, that the charge to the jury must be considered as a whole in the same connected way in which it was given, and on the presumption that the jury did not overlook any portion of it; and if, when so considered, it presents the law fairly and correctly, it will afford no ground for reversing the judgment, though some of the expressions, when standing alone, might be regarded as erroneous.

Applying this rule to the charge now considered, I think, by fair intendment, it could only mean that while the plaintiff could not recover if she entered on the platform when the train was in motion in violation of a rule of the company properly posted, yet the rule would not apply if she took that position after the porter had called the station and when the train, immediately after such call, had come to a stop, or so near it that the plaintiff, in the exercise of reasonable care, could not discover whether it had stopped or not.

So interpreted, I think the charge a correct one on the facts presented, and that the rule only applies and prevents recovery where the passenger voluntarily goes on the platform when the train is perceptibly in motion; and does not, and was never intended to apply to cases like the present, where the passenger goes on the platform by the implied invitation of the defendant's employees when its train had come to a stop, or so nearly so that the passenger could not tell whether it was moving or not.

The opinion of the Court, as I understand it, in upholding a contrary view, applies and extends the rule to a case which is not in its spirit nor within its letter, by any fair or reasonable construction; and, in its practical effect, may, and frequently will, enable a carrier, by invitation of its employees, reasonably relied upon, to entice a passenger to his

hurt, injure him by gross negligence and escape with impunity.

The interpretation put upon this rule and statute is not only not grounded in right reason, but is not supported by any well-considered authority.

There are several decisions which hold that the mere call of a station does not amount to an invitation to a passenger to go on the platform for the purpose of alighting while the train is still in motion. But no such decision was made on facts similar to those presented in the case we are considering: where the porter called the station, the train slowed up, and either stopped or came so near it that its motion could not be observed. The better considered authorities hold that this amounts to an implied invitation to the passengers to step on the platform for the purpose of alighting; and if, in so doing, a passenger is injured by the negligence of the company's employees, the plaintiff can recover.

In the case of *Railroad v. Meyers,* 62 Federal Reporter, 367, being a decision of the Court of Appeals of the Seventh Circuit, *Fuller,* Circuit Judge, *Jenkins,* Circuit Judge, and *Grosscup,* District Judge, present and taking part in the decision, it was said:

"It is urged that there is exemption from liability here by reason of the provision of the statute of Indiana (Rev. St.; 3928), which declares: 'In case any passenger on any railroad shall be injured on the platform of a car, or any baggage, wood, or freight car, in violation of the printed regulations of the company posted up at the time in a conspicuous place inside of its passenger-car then in the train, such company shall not be liable for the injury, provided said company at the time furnished cars sufficient for the proper accommodation of the passengers.'

"It was found by the jury that, on the inside of the door of the car in which the defendant in error was riding, the

143—21

company had placed a notice warning passengers from riding on the platform when the train was in motion. This statute was obviously intended to absolve the company from responsibility for damages to passengers imprudently and improperly standing or riding upon the platform; but we cannot conceive that it was designed to apply to a case of a passenger justifiably leaving a car, the platform being the only mode of egress, and the defendant in error being there by invitation of the servant of the company for the purpose of alighting, and was not, we think, riding upon the platform within the meaning of the statute"—citing *Buel v. Railroad,* 31 N. Y., 314; *Railroad v. Miles,* 88 Ala., 256.

And in Cyc., vol. 6, 638, it is said:

"It will, in general, constitute negligence on the part of a passenger who violates a regulation made by a carrier with reference to the safety of passengers, and for an injury resulting from such violation he cannot recover. But the passenger may properly rely on the discretion of the person in charge of the conveyance as to what would be safe conduct: thus, while it is usually in violation of the rules to ride on the platform of a moving train, yet, if this is by the express or implied direction or consent of the person in charge of the train or car, it will not be imputed to the passenger for negligence."

And in Amer. and Eng. Ency., vol. 5, 678, in note 1, it is said:

"The regulation forbidding passengers to stand on the platform of a car while the train is in motion being reasonable and proper, a passenger who is injured while standing on the platform, in violation of such regulation, is guilty of contributory negligence, and cannot maintain an action to recover damages. But the passenger who remains there only long enough to ascertain that the train has not stopped does not violate the regulation prohibiting passengers from riding on the platform."

These authorities, I think, state the correct doctrine, and, applied to the facts of the case before us, will show that the trial has been free from reversible error.

There could be no better illustration of the' wisdom of this position than the facts disclosed in the record.

As heretofore stated, the plaintiff, on the train for the second time in her life, ignorant of any washout or of any directions or custom of the company to make a stop at the washout, hears the porter call "Matthews," the station to which she was going. The train immediately slowed up. The plaintiff, acting on the call, in connection with the slower motion of the train, goes to the door for the purpose of alighting, and when she steps on the platform the train is at a standstill, or so near it that, in the exercise of .ordinary care, she cannot tell that it is in motion.

It was in presenting this theory and the evidence tending to support it that the alleged error was committed; and it seems to me that a mere statement of the testimony is a complete answer to the position.

I am of opinion that, both on reason and authority, the verdict and judgment should be upheld.

CLARK, C. J., concurs in the dissenting opinion.