OLA WALKER, ADMINISTRATRIX OF ODELL WALKER, v. CANNON MANUFACTURING COMPANY.

(Filed 22 November, 1911.)

1. **Master and Servant—Safe Place to Work—Safe Appliances—Dangerous Machinery—Negligence.**

An employer of labor must furnish the employee a place to do the work assigned to him as reasonably safe as the nature of the business will admit, and when the employment is in the operation of mills and other plants having machinery more ·or less complicated, and driven by mechanical power, he is required to provide methods, implements, and appliances such as are known, approved, and in general use.

2. **Same—Evidence—Nonsuit.**

In an action to recover damages for the alleged negligent killing of plaintiff's intestate, employed by defendant to operate a rip-saw in his plant operated by steam, there was evidence tend-

ing to show that the saw was "wobbly" and operated with anti-
quated machinery upon a table that was of an obsolete kind,
and by belts nearly horizontally placed, without boxing or
guards, so that planks could readily fall upon them under the
circumstances of the employment, and cause the injury com-
plained of, by being hurled from the running belt, and in no
other manner; that the machinery and appliances furnished
were not such as were known, approved, and in general use,
and if they had been the injury would not have been inflicted:
*Held,* the evidence was sufficient for the jury to find that the
plank had been hurled upon the plaintiff's intestate from the
unguarded belt, owing to the defendant's negligence, and a
motion to nonsuit was properly overruled.

3. Same—Contributory Negligence—Burden of Proof.

In an action for damages for the alleged negligent killing of
plaintiff's intestate while at work at defendant's rip-saw, by
reason of improper machinery and appliances furnished by the
defendant for the work, causing the death by a plank hurled
from a running belt, the defense of contributory negligence was
set up in bar, that the intestate was sawing, at the time of the
injury, a board on the table, and before the board had gone
through the saw he put another board in and negligently and
carelessly sawed the second board and shoved it so that the
first board caught in the saw and was thrown back, striking him
on the head and causing his death, and against this the intestate
had been warned: *Held,* an instruction to the jury was correct
which, in effect, charged if they should find from the greater
weight of the evidence that the intestate was injured in this
manner, the plaintiff could not recover.

4. Master and Servant—Safe Place to Work—Safe Appliances—Dan-
gerous Machinery—Assumption of Risks.

In an action for damages for the wrongful killing of plaintiff's
intestate while at work at defendant's rip-saw, there was evi-
dence tending to show that it was done by a plank falling upon
and being thrown from an unguarded belt operating the saw,
and that the machinery was old and obsolete: *Held,* a charge
was correct, upon the application of the doctrine of assumption
of risks, that if the jury find from the greater weight of the
evidence that the conditions were such that only a reckless man
would have continued to work thereunder, and the probabilities
of being injured were greater than the probabilities of safety,
the jury should answer the pertinent issue in the affirmative,
in defendant's favor, for upon the facts in this case it could
not be assumed as a matter of law.

APPEAL from *Lyon, J.,* at April Special Term, 1911, of
ROWAN.

The action is brought to recover damages for the death of
Odell Walker, alleged to have been caused by the negligence
of the defendant.    These issues were submitted:

1. Was the death of plaintiff's intestate caused by the neg-
ligence of the defendant, as alleged in the complaint?   Answer:
Yes.

2. Did plaintiff's intestate contribute to his own injury and
death by his own negligence, as alleged in the answer?
Answer: No.

3. Did plaintiff's intestate voluntarily assume the risks and
dangers incident to and attendant upon the operation of the
machinery, as alleged in the answer?   Answer: No.

4. What damage, if any, is the plaintiff entitled to recover?
Answer: $4,951.40.

The defendant appealed from the judgment rendered.

*Theodore F. Kluttz & Son and R. Lee Wright for plaintiff.
Davis & Davis for defendant.*

BROWN, J.   There are a very large number of exceptions in
the record that are made the basis of twenty-five assignments
of error.   It is impossible to discuss these assignments *seriatim*
without going over much ground that has heretofore been cov-
ered by adjudications of this Court as well as unduly lengthen-
ing this opinion.   Sixteen assignments of error relate to the
admission of evidence.   Upon a careful examination of them
we find no substantial error, at least nothing that would justify
us in granting a new trial.

The principal contention of the learned counsel for the de-
fendant is based upon his 17th and 18th assignments of error,
presenting the question as to the sufficiency of the evidence of
negligence.   The evidence introduced by the plaintiff, taken in
its most favorable light, as it must be considered upon a motion
to nonsuit, tends to prove that her intestate, Odell Walker, was
employed by defendant in its manufacturing establishment at
Kannapolis, and at time of his injury was operating a rip-saw,
used for splitting boards as well as sawing them up in short

pieces. The saw was operated by a belt which ran from the pulley operating the saw to another pulley, so that the belting was nearly horizontal with the saw and did not run perpendicularly to a pulley above or below the saw. The machine was operated by electric power overhead. There is evidence that this machine was very old, antiquated, "wobbly," and out of repair; that the table upon which the saw operated was of a disused and antiquated pattern; that the saw should have been operated on an adjustable table.

But the principal ground of negligence is that the belting was not cased and instead of running perpendicularly above or below to reach the power, it was horizontal and so placed that a plank was very liable to fall on it from the saw-table or elsewhere and be hurled against the operator, and plaintiff avers that her intestate was killed by a plank falling on this belt and striking him on the head with such force as to crush his skull and produce death.

There is evidence that rip-saws in general use are now run by a counter-shaft, and that if the power is above, the counter-shaft is below, and if power is beneath, the counter-shaft is underneath; that the saw always extends beyond the table, with counter-shaft hung above the ceiling. One belt runs the main-line pulley over counter-shaft; on that counter-shaft the pulley belt runs to that third pulley underneath saw-table. If power is underneath the house, counter-shaft is beneath also.

There is also some evidence to the effect that this being a horizontal belt running somewhat on a level with the saw, the belt should be cased so as to avoid the danger of objects falling on it and injuring the operator by being hurled against him.

It is now familiar learning that the employer of labor must furnish a reasonably safe place in which to do the work assigned—as reasonably safe as the nature of the business will admit. It is equally as well settled that where the employees are engaged in the operation of mills and other plants having machinery more or less complicated, and usually driven by mechanical power, in such case a standard of duty has been fixed and the employer is required to provide methods, implements, and appliances such as are known, approved, and in

general use. *Bradley v. R. R.,* 144 N. C., 558; *Hicks v. Mfg. Co.,* 138 N. C., 319; *Horne v. Power Co.,* 141 N. C., 50; *Ferrington v. Tobacco Co.,* 141 N. C., 80; *Avery v. Lumber Co.,* 146 N. C., 592; *Shaw v. Mfg. Co.,* 146 N. C., 235; *Phillips v. Iron Works,* 146 N. C., 209. There is abundant evidence in the record that the machine used in this case was of "ancient lineage," possibly belonging to the ante-bellum days; that it was sadly out of order, "wobbly," and dangerous to operate.

In his able argument counsel for defendant did not undertake to defend the character of this machine, but contends with much ingenuity that the condition of the machine did not cause the injury; that the injury was the result of an accident unaccounted for in the evidence.

The evidence shows that according to present usage the belt should have been placed in a perpendicular position, or else, as it was nearly on a line with the saw, casing should have been put around it to prevent objects falling on it from being hurled against the operator. In answer to which it is contended that there is no evidence that the plank which crushed the intestate's skull was thrown from the belt.

This is undoubtedly a debatable question, as no witness saw it fall on the rapidly moving belt or strike the intestate. Yet that the plank struck the intestate must be admitted; that it struck his head with crushing force is demonstrated; that it could not have acquired such momentum from the ordinary passing of it over a rip-saw is evident. It is a fair inference that it must have been thrown from the belt, as it is hard to account for its force in any other manner. This is not a necessary inference, but a legitimate one from the circumstances of the case, and the jury seem to have taken that view.

We think, upon the question of proximate cause as well as negligence, his Honor's charge is a fair and clear presentation of the case to the jury.

We do not think the assignments of error in respect to the charge upon the second issue can be sustained.

The negligence set up in the answer is that while the intestate was sawing a board on the said table, and before the board had gone through the saw, he put another board into the saw and

negligently and recklessly sawed said second board and shoved it forward until it knocked the first board which he was sawing onto the saw, causing it to be caught in the saw and thrown back, striking him in the head, and in this way was guilty of negligence which directly contributed to bring about the injury complained of.

His Honor charged upon this phase of the case that if the jury believe the evidence of the defendant's witness, Lyerly, that he instructed and warned the plaintiff's intestate not to put a second board into the saw until after he had completely sawed the first board, upon the ground that it was dangerous to do so, and the jury should find from the greater weight of the evidence that the plaintiff's intestate was injured in this manner, the plaintiff cannot recover in this case, and the jury will answer the second issue "Yes."

We do not see how the question of contributory negligence could have been put more fairly or clearly to the jury.

Upon the third issue, of assumption of risk, his Honor submitted the matter to the jury in as favorable a view for defendant as it could expect under the adjudications of this Court, when he charged, That if the jury find from the greater weight of the evidence that the condition of the machine at which the plaintiff's intestate (Odell Walker) was working at the time he was hurt was so defective and dangerous that only a reckless man would have worked at it, and that the probabilities of the plaintiff's intestate (Odell Walker) getting hurt were greater than the probabilities of his safety, the jury are instructed to answer the third issue "Yes."

The evidence that the intestate negligently continued to work on in the presence of a known and obvious danger, which should have deterred a man of ordinary prudence, is not so striking as to warrant the conclusion as matter of law that the intestate assumed the risk to such extent as to bar recovery.

Upon a careful review of the entire record we find no error that justifies us in directing another trial.

No error.